IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **DANIEL CLATE ACKER,** § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| vs. § | No. 4:06-cv-00469 | |
| § | | |
| **RICK THALER,** § | | |
| **Director,** § | | |
| **Texas Department of Criminal** § | | |
| **Justice, Correctional Institutions** § | **(Death Penalty Case)** | |
| **Division,** § | | |
| Respondent. § | | |
| § | | |

**JOINT PRE-HEARING STATEMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Come now the parties to this action, Petitioner Daniel Clate Acker, by and through counsel of record A. Richard Ellis, and Respondent Rick Thaler, by and through counsel of record, Tina J. Miranda of the Office of the Attorney General of the State of Texas, and file this "Joint Pre-Hearing Statement."

In support thereof, the parties would respectfully show the following:

1. This matter is a capital *habeas corpus* proceeding in which Mr. Acker ("Petitioner") has invoked the jurisdiction of this Court pursuant to 28 U.S.C. §2254 *et. seq.*

2. On January 7, 2011, this Court issued its "Order Granting Joint Motion to Continue Evidentiary Hearing." (Docket No. 63.) In that Order, the Court held that " the evidentiary hearing

shall take place from Thursday, June 16, 2011 at 9:00 a.m. until Friday, June 17, 2011 at 5"00 p.m. in the United States District Courthouse, 7940 Preston Road, Plano, TX 75024."(Docket No. 63.)

3. In that Order, the Court also ruled that "on or before May 15, 2011, the parties shall submit to the court a pre-hearing statement containing the issues in dispute, the witnesses expected to testify and the substance of their expected testimony." (*Id.*)

4. This "Joint Pre-Hearing Statement" is respectfully submitted in accordance with that Order.

## JOINT PRE-HEARING STATEMENT

**A. Issues In Dispute.**

This Court has previously ruled that "petitioner's motion for an evidentiary hearing is Granted as to his actual innocence claim, and the court will address his other requests for evidentiary hearings at a later date." (Docket No. 56 at 2-3.)

Thus, the issue in dispute at this hearing is Petitioner's actual innocence claim (Claim One). This will necessarily involve an inquiry as to the extent that this issue was pursued and/or presented at trial; efforts of trial counsel and experts/investigators to do so; the effectiveness of these efforts and presentation; and trial court rulings, if any, that may have prevented or hindered that presentation.

**B. Witnesses Expected to Testify and Substance of Their Expected Testimony.**

**i) Petitioner's Expected Witnesses.**

**a) Ronald Ferguson**, **(address and phone number redacted)**

Mr. Ferguson was Petitioner's first chair trial attorney.

Expected to testify to: the trial court's denial of funding for experts; trial court's refusal to

allow the defense investigator Mr. Sands to testify as to driving times and other demonstrations regarding the truck; efforts to disprove and discredit the State's theory that Petitioner had strangled the victim while driving; his efforts to investigate and present Petitioner's claim that the victim jumped from the truck; effect of various trial court rulings on the presentation of this evidence.

### b) William Howard McDowell, (address and phone number redacted)

Mr. McDowell was Petitioner's second chair trial attorney.

Expected to testify to: the trial court's denial of funding for experts; trial court's refusal to allow the defense investigator Mr. Sands to testify as to driving times and other demonstrations regarding the truck; efforts to disprove and discredit the State's theory that Petitioner had strangled the victim while driving; his efforts to investigate and present Petitioner's claim that the victim jumped from the truck; effect of various trial court rulings on the presentation of this evidence.

### c) Dorcas Vittatoe, (address and phone number redacted)

Ms. Vittatoe is Mr. Acker's older sister.

Expected to testify to: actions of Mr. Acker on the night in question; her knowledge of Petitioner and the victim's relationship; whether she knew or heard of Markie's attempts to jump from the truck previously; clarification of Petitioner's comments re the knife (19 RR 71-72); his reputation for non-violence or violence.

### d) Clayton McGraw, (address and phone number redacted)

Mr. McGraw was foreman of the grand jury that indicted Petitioner.

Expected to testify to: that the grand jury was unable to determine what object was used to strangle the victim Markie George. 19 RR 128. They were also not able to determine if it was done manually or with a rope or ligature. 19 RR 128.

**e) Alicia Smiddy**, **(address and phone number redacted)**

Ms. Smiddy was an eyewitness to the abduction of the victim.

Expected to testify to: her inconsistent statements: at trial she said they drove off swerving from side to side on the road. 19 RR 179-180. As he drove away, it seemed as if he was leaning over towards the middle of the seat. 19 RR 182. Mr. Acker could have been trying to keep her from jumping out. 19 RR 187. Mrs. Smiddy did not see her in the truck as it drove away. 19 RR 191-194. The sheriff's deputies arrived about fifteen minutes later. 19 RR 183. Although at trial she stated that Ms. George did not attempt to exit the truck after they drove away, on the day of the incident she gave a statement to the deputies that said "she was trying to get out of the car as it spun out through the ditch." 19 RR 186.

**f) Sabrina Ball**, **(address and phone number redacted)**

Ms. Ball lived near Nancy Acker and was a witness to the victim's statements regarding her prior attempt to jump from the truck.

Expected to testify to: Markie George's prior attempt to jump from the truck. Her testimony was excluded. She lived near Petitioner's mother Nancy Acker, and testified that she met Markie George one time, on the night of February 26, 2000. 21 RR 8.[1] Ms. George came to her door at about 10:30 p.m.. 21 RR 10. She was down on her hands and knees crying and saying "Help me, help me." 21 RR 11. She was brought inside and said that Daniel was going to kill her, that he was crazy. 21 RR 11. Then she called the Sheriff's Department. 21 RR 12. Ms. George said that she had been at "Bustin Loose" with Mr. Acker and a fight had started and they had left. 21 RR 13. In the truck, Mr. Acker took her head and tried to beat it against the dash and she tried to jump out and

---

[1] *See* Exhibit 30 for witness Sabrina Ball's statement.

he grabbed her by the hair and dragged her back in. 21 RR 13. The fight had continued at Mr. Acker's mother's house and she had fled to the witness's house. 21 RR 13. At the Acker house, the phone cord was ripped out, a window was broken and Mr. Acker's mother was thrown on the couch. 21 RR 16. This caused Ms. George to flee to Ms. Ball's house. 21 RR 20.

The statement was offered under the excited utterance exception to the hearsay rule. 21 RR 14. The witness did not know how long they were at Mrs. Acker's house. 21 RR 18. When Ms. George first showed up, she was hysterical but gradually calmed down once she was inside and made the call to the police. 21 RR 22-23. But she was more concerned about the fight in the truck than the fight in the house and that's what she mentioned first. 21 RR 25. The court said that a spontaneous utterance must be a spontaneous reaction to an exciting event. 21 RR 29. The court ruled that only the first part of the victim's statement, about Mr. Acker being crazy, would be admissible, and the latter part about jumping out of the truck was not because it was not an excited utterance, because she was being questioned about the events. 21 RR 30.[2] The Court later ruled that no testimony from this witness was to be considered by the jury. 21 RR 65.

**g) William Brandon Anderson (address and phone number redacted)**

Mr. Anderson was an employee of the Hopkins County Sheriff's Office and took the statement of Ms. Ball regarding the Feb. 26, 2000 attempt by the victim to jump from the truck.

Expected to testify to: that he was working on February 26, 2000, and responded to a call at Mrs. Ball's home. 21 RR 37. Markie George was there and she was shaking and crying. 21 RR 38. She said that she had been in a verbal argument with Mr. Acker. 21 RR 38. She said she was at

---

[2] *Id.* The witness's statement indicates that there was no logical reason to term part of it an "excited utterance" and part not such an utterance.

"Bustin Loose" and left and during an argument in the truck, she had attempted to exit the vehicle while it was driving down the road, and Mr. Acker had grabbed her by the arm to keep her from getting out. 21 RR 39. She also said that they continued arguing when they returned to Mrs. Acker's residence, she stepped between them and Mr. Acker picked up his mother and threw her on the couch. 21 RR 40. Ms. George said she was going to call the police and Mr. Acker ran through the sliding glass window to try to get away. 21 RR 40. Ms. George left the Acker house at that time. 21 RR 40. The defense offered this evidence and the Court sustained an objection to it. 21 RR 41.

### h) Walter Allen Story (address and phone number redacted)

Mr. Story was the 9-1-1 communications supervisor in Hopkins County, and worked for the Hopkins County Sheriff's office.

Expected to testify to: The 9-1-1 radio log recorded a call from Mr. Smiddy at 11:45 a.m. and a call from Mr. Ferrell at 11:47 a.m. 21 RR 69, 72. Officer Hill arrived at the location at 11:51 a.m. 21 RR 69. At 11:53 a.m. the officer called in to say there was no pulse. 21 RR 75.

### i) Nancy Acker (address and phone number redacted)

Nancy Acker is Petitioner's mother.

Expected to testify to: on March 12 she saw her son shortly before noon at Bentley Electric. 21 RR 81. He didn't have his shirt on and his jeans were streaked with what could have been blood. 21 RR 82. He was very upset and said that he had to get help for Markie and then said that Markie was dead. 21 RR 82, 85-86. He said that she had jumped out of the truck and was dead. 21 RR 83. Mrs. Acker told him to go to his sister Dorcas's house. 21 RR 83. Both Mr. Acker and his mother went to Dorcas's house and told her that Markie had jumped from the truck on the road by their house. 21 RR 84.

Mrs. Acker had been looking for her son because she had been to Dorcas's house earlier and she said Mr. Acker had been drinking and was trying to locate Markie. 21 RR 88. She went to the trailer house and then back to town. 21 RR 89. She saw him at Bentley Electric, standing by the truck in the parking lot. 21 RR 91-94. Mrs. Acker pulled up to him in her car. 21 RR 95. Mr. Acker was just standing by the truck. 21 RR 100-101. He wasn't talking to himself. 21 RR 103.

The court ruled that this was not an excited utterance and was inadmissable hearsay. 21 RR 104.

Ms. Acker is also expected to testify to her son's reputation for non-violence and her knowledge of the victim.

### j) Kenny Baxter (address and phone number redacted)

Mr. Baxter is a friend of the Acker family.

Expected to testify to: that he was told by Mr. Acker that Ms. George had jumped from the truck. 21 RR 105. The jury did not hear this evidence.

### k) Daniel Clate Acker, c/o Texas Department of Criminal Justice, Polunsky Unit, Livingston, TX

Mr. Acker is the Petitioner.

Expected to testify to: his version of events, summarized at pages 37-45 of the Petition, which need not be repeated here.

### l) John Riley Sands (address and phone number redacted)

Mr. Sands was the defense investigator.

Expected to testify to: that he had conducted some experiments relating to the distance from

the petitioner's home to the crime scene and the time it took to drive there. 21 RR 129. Mr. Sands stated that he obtained the times by driving within the posted speed limits. 21 RR 130-132. Mr. Sands was also asked to see if he could open the door from the driver's seat of the truck. 21 RR 134. Defense counsel pointed to testimony of "road rash" which indicated the victim hit the ground when the vehicle was moving. 21 RR 134.

Mr. Sands also performed tests on the truck. He obtained a similar truck, a Ford 350 one-ton truck, and he testified *in camera* that he was not able to open the door from the driver's seat without extending himself quite a bit so that he could still see above the dashboard. 21 RR 142. He could not have opened the door and pushed someone out of the vehicle while driving on the road. 21 RR 142. An objection to this evidence was sustained. 21 RR 143. The trial court had earlier denied funds for a defense forensic expert because they had this investigator, but then refused to let him testify as to these forensic matters.

Mr. Sands will also testify to his investigations and how the trial court rulings disallowed his findings to be presented to the jury.

**m) Bill Reece (address and phone number redacted)**

Mr. Reece was employed by the Hopkins County Sheriff's Office.

Expected to testify to: at the Sheriff's Office, this patrolman interviewed Mr. Acker after he waved down the patrolman and surrendered. 21 RR 251.

**n) Dr. Glenn Larkin (address and phone number redacted)**

Dr. Larkin is Petitioner's medical examiner/forensics witness.

Expected to testify to: the errors and omissions of the autopsy (*see* Petition at 87-92); the fatal flaws and errors in Dr. Gonsoulin's conclusions at the autopsy (*see* Petition at 92-96); the flaws and

errors in Dr. Gonsoulin's trial testimony (*see* Petition at 96-101); his conclusions that the victim was not strangled (*see* Petition at 101-103).

Due to health issues, and his advanced age, Dr. Larkin will be requesting permission to testify via video-conference and a motion to this effect will be submitted by Petitioner. Respondents are unopposed to this request.

**o) Christopher Hill (address and phone number redacted)**

Mr. Hill was employed by the Hopkins County Sheriff's office at the time of the trial.

Expected to testify to: On March 12, 2000, he responded to a report of a female lying in the road on Road 3519. 20 RR 7-8. He was the first officer to arrive at the scene. 20 RR 26.[3] The body was lying face up on the west side of the roadway. 20 RR 9. Blood was in evidence near the body, a large red spot on the ground. 20 RR 21, 40. There was no sign of a pulse or a response that she was alive. 20 RR 10, 26. The man that had called the police was there. 20 RR 11.

This witness is also expected to testify to Mrs. Smiddy's original statement. Defense counsel wished to ask Officer Hill about a dispatch report that the officer had received. The report stated that the complainant, Mr. or Mrs. Smiddy, had said that a male suspect forced the female into a truck and then they drove off, and while driving off "the female subject tried to exit the vehicle and the male subject jerked her back in." 10 RR 42. The purpose of this was to impeach the Smiddys, who had testified differently. 20 RR 43. The Court sustained the prosecution's hearsay objection. 20 RR 45.

Further, as to each and every question the defense asked of Officer Hill, the prosecution objected and the Court sustained the objections. 20 RR 45.

---

[3] The officer initially stopped at the first residence on the road, where some people were outside, but determined that these were not the same people who had called the police. 20 RR 65. He did not know if they were ever talked to as possible witnesses. 20 RR 66-67.

**p) Sherri Walker (address and phone number redacted)**

Sherri Walker is Petitioner's younger sister.

Expected to testify to: knowledge of the victim; knowledge of Petitioner's history of violence; before victim's death, had told Daniel that "you don't need to be around someone who acts like this;" a restaurant incident when she jumped up on a table and tried to attack a waitress; her history of heavy drinking; that she had been shot when she was caught crawling though a window; opinion of trial attorneys; her belief in Petitioner's innocence.

**ii) Respondents' expected witnesses.**

    **a)      Dr. Vincent DiMaio**

Dr. DiMaio is expected to testify that a diagnosis of manual strangulation is not viable. Any injuries present are consistent with going out of the truck and are non-specific. In addition, to strangle someone, one would have to maintain continuous pressure on the neck for two to three minutes. Dr. DiMaio is also expected to testify that from the autospy findings there is no way that one can say if the deceased was pushed or jumped. The resultant injuries are the same. Finally, Dr. DiMaio is expected to testify that the injuries are consistent with being run over by a vehicle.

    **b)      Toney Hurley, Chief Investigator, Hopkins County Sheriff's Office (address and phone number redacted)**

Toney Hurley is expected to testify regarding his knowledge of the evidence collected in this case, specifically evidence related to and collected from Daniel Acker's truck. Hurley is also expected to testify regarding the details regarding the size and style of Acker's truck. Hurley is also

expected to testify regarding his personal knowledge of Acker's size and strength, and the relative size and strength of the victim, Marquette George.

## CONCLUSION

This "Joint Pre-Hearing Statement" is respectfully submitted by the parties in accordance with the Court's Order.

Respectfully submitted,

*s/s A. Richard Ellis*

_____
A. Richard Ellis
Texas Bar No. 06560400
75 Magee Avenue
Mill Valley, CA 94941
(415) 389-6771
FAX: (415) 389-0251
a.r.ellis@att.net
ATTORNEY FOR PETITIONER


*s/s Tina J. Miranda*

_____
Ms. Tina J. Miranda
Assistant Attorney General
Postconviction Litigation Division
Texas Bar No. 24026139
Office of the Attorney General, State of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel.: (512) 936-1400
FAX: (512) 320-8132
tina.miranda@oag.state.tx.us
ATTORNEY FOR RESPONDENT

**CERTIFICATE OF SERVICE**

       I, A. Richard Ellis, counsel of record for Petitioner, do hereby certify that on May 16, 2011, I electronically filed the above and foregoing pleading with the Clerk of the Court for the United States District Court for the Eastern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented to accept this Notice as service of this document by electronic means:

        Ms. Tina Miranda
        Assistant Attorney General
        Postconviction Litigation Division
        Office of the Attorney General, State of Texas
        P.O. Box 12548, Capitol Station
        Austin, Texas
        tina.miranda@oag.state.tx.us

        /s/ *A. Richard Ellis*
        _____
        A. RICHARD ELLIS
        COUNSEL FOR PETITIONER