IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN  DISTRICT OF TEXAS
SHERMAN  DIVISION

| | | |
|---|---|---|
| DANIEL CLATE ACKER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | No. 4:06-cv-00469-RAS |
| | § | |
| DIRECTOR , | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | (Death Penalty Case) |
| Division, | § | |
| Respondent. | § | |
| | § | |

## PETITIONER'S POST-HEARING BRIEF

# PETITIONER'S EVIDENTIARY HEARING EXHIBITS

AO 187 (Rev. 7/87) Exhibit and Witness List

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

# UNITED STATES DISTRICT COURT

JUN 16 2011

DAVID J. MALAND, CLERK
BY
DEPUTY _____

| EASTERN | DISTRICT OF | TEXAS |
|---|---|---|

Sherman Division

DANIEL CLATE ACKER

**EXHIBIT AND WITNESS LIST**

V.

DIRECTOR OF TDCJ - CID

Case Number:  4:06cv469

| PRESIDING JUDGE | Petitioner's PLAINTIFF'S ATTORNEY | Respondent's DEFENDANT'S ATTORNEY |
|---|---|---|
| Richard Schell | Allen Richard Ellis | Tina Miranda |
| TRIAL DATE (S) Evidentiary Hrg 6/16/11 | COURT REPORTER Jerry Kelley | COURTROOM DEPUTY Lori Bates |

| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES |
|---|---|---|---|---|---|
| X |  | 6/16/11 |  |  | Witness Nancy Acker |
| X |  | 6/16/11 |  |  | Witness Lewis Tatum |
|  | X | 6/16/11 |  |  | Witness Dr. Vincent DiMaio |
| X |  | 6/16/11 |  |  | Witness John  Riley Sands |
| X |  | 6/16/11 |  |  | Witness Sabrina Ball |
|  | X | 6/16/11 |  |  | Witness Toney Hurley |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| 1 |  | 6/16/11 |  | X | Hopkins County Sheriff Supplemental Report |
| 2 |  | 6/16/11 |  | X | Letter dated May 27, 2011 from Dr. Vincent DiMaio |
|  | 1 | 6/16/11 |  | X | Packet of Pictures |
|  | 2 | 6/16/11 |  | X | Curriculum Vitae of Vincent Di Maio, M.D. |
| 3 |  | 6/16/11 |  | X | Photograph of truck |
| 4 |  | 6/16/11 |  | X | Indictment |
| 5 |  | 6/16/11 |  | X | Statement of Officer William Brandon Anderson - Hopkins County Sheriff Office |
| 6 |  | 6/16/11 |  | X | Statement of Sabrina Ball - Hopkins County Sheriff Office |
| 7 |  | 6/16/11 |  | X | Statement of Deputy Chris Hill - Hopkins County Sheriff Office |
| 8 |  | 6/16/11 |  | X | Statement of Alicia Smiddy - Hopkins County Sheriff Office |
| 9 |  | 6/16/11 |  | X | 3-12-2000 Statement of Marquetta George - Investigator Toney Hurley |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page 1 of __1__ Pages

# PETITIONER'S EVIDENTIARY HEARING EXHIBIT 1

# HOPKINS COUNTY SHERIFFS OFFICE
## SUPPLEMENTAL REPORT

OFFENSE____ INCIDENT ✓

PAGE _1_ OF _1_

| CASE NUMBER | OFFENSE / INCIDENT | REFERENCE: |
|---|---|---|
| SO 200698 | Incident | Marqueta George / Acker |

### NARRATIVE

On 2-26-00 at 10:41pm I deputy L Tatum and deputy B Anderson were dispatched to a residence on cr 2450 reference assault in progress. When we arrived we met with a white female a Marqueta George and another white female who was later learned to be Daniel Acker's mother. Both at that time were at a neighbor's home where they had came to call 911. Mrs George advised that her and Mr Acker had been at bustin loose where they had gotten into a argument. When they started to the residence on cr 2450 which was Mr Acker's mother's residence, Mrs George had tried to jump out of the prckup Mr Ackers he caught her by the arm and pulled her back into the vehicle. When they arrived at Daniel Acker's mother's residence they were arguing Mr Acker's mother tried to break them up Mr Acker grabed his mother and threw her on the couch. At that point Mrs George told Mr Acker she was going to call the cop's at that point he ran through the sliding glass door's in the back of the residence. At that time Mr Acker's mother and Mrs George went to a neighbor's house to call 911. When we arrived Mr Acker had already theft the scene.

Both my self and Deputy Anderson tried to get Mrs George and Mr Acker's mother to file a report, they would not. They stated they would not give us a statement. Mrs George stated she was afraid he would go back to jail and not see his children she declined any type of a report.

| REPORTING OFFICER | | DATE | APPROVING SUPERVISOR | | DATE |
|---|---|---|---|---|---|
| L Tatum | 618 | | | | |
| FOLLOW UP INVESTIGATION | | | ASSIGNED TO | | DATE |
| YES    NO | | | | | |

# PETITIONER'S EVIDENTIARY HEARING EXHIBIT 2



VINCENT J.M. DI MAIO, M.D.
CONSULTANT IN FORENSIC PATHOLOGY
10 CARRIAGE HILLS
SAN ANTONIO, TEXAS 78257
(210) 698-1400
FAX (210) 698- 3809
Email: vincent_dimaio@yahoo.com

May 27, 2011

Tina J. Miranda
Assistant Attorney General
Post conviction Litigation Division
P.O. Box 12548
Austin, Texas 78711

Re:    Texas v. Acker

Dear Ms. Miranda:

As requested, I have reviewed the following materials in regard to the above case:

1.  The autopsy report
2.  Photos of the body and scene
3.  The report of G.M. Larkin, M.D.
4.  Trial Transcripts Volumes 19-22

Based on the aforementioned materials, it is my opinion that the diagnosis of strangulation of Marquette George is not supportable by the evidence. The neck injuries and petechiae are non-specific and better explainable by the massive blunt force injuries incurred when Ms. George went out the moving truck and was run over. In addition, to strangle an individual one has to maintain continuous pressure on the neck, occluding both the carotid arteries, for 2-3 minutes. I do not think this would be possible under the circumstances of this incident i.e. using one hand while driving a truck and the victim a healthy adult female.

As to whether, Ms. George jumped or was pushed from the truck, it is impossible to say from the injuries. While Dr. Larkin gives a detailed explanation as to how each injury occurred and why she had to have jumped out the truck, in my opinion this is not possible, due to too the many variables. These include: the speed of the truck; whether it was going straight or swerving when she left the truck; if swerving to the right or left. In addition, was Mr. Acker holding on to her or her clothing? Was he pushing her out or trying to pull her back? Did she go out face first as if diving, or backward as if falling or being pushed, or sideways as if she was falling or being pushed to her right? Was she attempting to stop her exiting the vehicle by holding onto Mr.

Acker or the door or a seat belt?  With all these variables and possibilities, all that one can say from the autopsy findings is that she incurred her injuries from going out a moving vehicle and being run over by the vehicle.  In regard to absence of tire marks, these may be absent on both the clothing and the body in some cases.

Sincerely,

VINCENT J.M. DI MAIO, M.D.

# PETITIONER'S EVIDENTIARY HEARING EXHIBIT 3

Notice how far the utility bed sticks out past the cab.



# PETITIONER'S EVIDENTIARY HEARING EXHIBIT 4

0016026

**INDICTMENT - CAPITAL MURDER(TPC 19.03)**

FILED

01 JAN 23  AM 10: 38

PATRICIA DORNER
DISTRICT CLERK
HOPKINS COUNTY. TEXAS

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The Grand Jurors for the County of Hopkins, State of Texas, duly selected, impaneled, sworn, charged and organized as such at the January Term, 2001, of the Eighth Judicial District Court of said County, upon their oaths present in and to said Court, that **DANIEL CLATE ACKER**, on or about the 12th day of March, 2000, and before the presentment of this indictment, in said County and State, did then and there, intentionally cause the death of an individual, namely, Marquetta Follis George, by homicidal violence, to wit: manual strangulation and ligature strangulation with an object, the exact nature of which is unknown to the grand jury, and blunt force injury resulting from causing her to impact a blunt object, the exact nature of which is unknown to the grand jury, and Daniel Clate Acker was then and there in the course of committing and attempting to commit the offense of kidnaping of Marquetta Follis George.

AGAINST THE PEACE AND DIGNITY OF THE STATE OF TEXAS.

_Clayton Mc Shaw_

FOREMAN OF THE GRAND JURY

A CERTIFIED COPY
ATTEST: _1-23_, _2001_
PATRICIA DORNER, DISTRICT CLERK
HOPKINS COUNTY, TEXAS
BY _Netha Hoover_ DEPUTY
NETHA HOOVER

# PETITIONER'S EVIDENTIARY HEARING EXHIBIT 5

# HOPKINS COUNTY SHERIFFS OFFICE
## SUPPLEMENTAL REPORT

OFFENSE_____ INCIDENT _✓_                                          PAGE _/_ OF _/_

| CASE NUMBER | OFFENSE / INCIDENT | REFERENCE: |
|---|---|---|
| S0200698 | *Incident* | *Margueta George + Daniel Acker* |

### NARRATIVE

On 2-26-00 Deputy Lewis Tatum and my self responded to an assault in progress on County Road 2450 5th residence on the left off of County Road 2870. When we arrived we were met by a white female by the name of Margueta George. Mrs. George was at a neighbors residence with another white female who was later found out to be her boyfriend's (Daniel Acker) mother. They both advised that mr Acker had left the residence prior to our arrival.

Mrs. George then advised officers that mr Acker and herself had been at Buskin Loose and had gotten into an argument and left the club and come back to his mother's house, while in the residence mr Acker became very violent and started arguing. Mrs. George stated that his mother had stepped in between them and mr Acker picked his mother up and threw her on the couch. Mrs. George then stated that they were going to call the the cop's and Mr Acker ran through the back sliding glass window. Mrs. George then stated that her and his mother ran to a neighbors house to call the Police. Mrs. George also advised later in her conversation that while mr Acker and her were on the way back to the residence from the club, she had attempted to jump from the truck and mr Acker caught her by the arm and pulled her back into the truck.

After speaking with Daniel Acker's mother she advised that they had both came in from the club and both were screaming at each other. She felt that the altercation was progressing and stepped in between them and mr Acker picked her up and threw her on the couch. At this time mrs George had threatened to call the police and mr Acker ran through the back sliding glass door, and her and mrs George ran to a neighbor's house. # Neither party wished to file any charges or give any statements against mr Acker. #

| REPORTING OFFICER | | DATE | APPROVING SUPERVISOR | | DATE |
|---|---|---|---|---|---|
| Brandon Anderson | | 6/12 | | | |
| FOLLOW UP INVESTIGATION | | | ASSIGNED TO | | DATE |
| YES   NO | | | | | |

# PETITIONER'S EVIDENTIARY HEARING EXHIBIT 6

# Hopkins County Sheriffs Office
### THE STATE OF TEXAS, THE COUNTY OF HOPKINS
#### *Voluntary Statement ( Not Under Arrest )*

I, Sabrina Ball                                    PAGE 1 OF 3 PAGES

DATE OF BIRTH IS 7-30-64, I AM NOT UNDER ARREST FOR, NOR AM I BEING DETAINED FOR ANY AM 36 YEARS OF AGE,

CRIMINAL OFFENSES CONCERNING THE EVENTS I AM ABOUT TO MAKE KNOWN TO Deputy S.R. Scott

MY ADDRESS IS Rt 8 Box 128 Sulphur Spgs TX AND HOME PHONE # IS 342-3973 885-7734

On February 26, 2000 at approx 10:30pm A woman came to our house. She was beating on the door and ringing the doorbell repeatedly. We answered the door and found her on her hands and knees at the front door. My husband recognized her as Markie George. I asked, "Are you O.K.?" She replied "No! He's crazy! He's going to kill me! Can I use your phone?" We told her to come inside, I asked, "Who is trying to kill you?" She replied, "Daniel Acker, he lives a few houses down, we got in a fight, we were at Austin Loose. We were in the truck and he was beating my head against the dash. I tried to jump out, but he pulled me back in. My face was just a few inches from the pavement." She was very upset, shaking and crying. I asked if he was chasing her + She said he had driven off in his truck. We gave er the cordless phone and she made the call.

R. Scott
WITNESS

_____
WITNESS

Sabrina Ball For Record Only
SIGNATURE OF PERSON GIVING STATEMENT
1-16-01

CX-2

# Hopkins County Sheriffs Office
### THE STATE OF TEXAS, THE COUNTY OF HOPKINS

STATEMENT CONTINUED:                     PAGE 2 OF 3 PAGES

STATEMENT OF ( PRINT NAME ) Sabrina Ball

She continued to talk about the fight and how she had run away. She stated they were at his moms house where the fight had continued. She said, "He's crazy. He ripped the phone out of the wall, busted a window, and even picked up his mother and threw her on the couch." She said that she ran to get away and saw the light on at our house.

The Sheriff's deputies arrived and questioned L.S. Dreage. She refused to file charges but was concerned about her purse she left in the pickup truck. Ms. Acker (Daniels mother) also came to our house during this time. Ms. Acker said " Ya'll are always fighting, you need to just stay away from each other and this kind of thing would not happen." Ms. Dreage said "I've got to call someone to pick up my son at the skating rink." She then made several calls but was unable to find anyone. While making these calls I spoke to her and urged her to file charges and stressed to her the need to

T.R. Scott
WITNESS

Sabrina Ball
SIGNATURE OF PERSON MAKING STATEMENT
1-6-01
DATE

WITNESS

JAN-8-2001 11:12A FROM: Distr Attorney

# Hopkins County Sheriffs Office
## THE STATE OF TEXAS, THE COUNTY OF HOPKINS

STATEMENT CONTINUED:

PAGE __3__ OF __3__ PAGES

STATEMENT OF ( PRINT NAME ) __Sabrina Ball__

do something in order to assure her safety, However, she said she just couldn't do it. Ms Acker offered to take her to pick up her son and they left together at that time.

_SB_

_S.R. Scott_
**WITNESS**

_Sabrina Ball_
**SIGNATURE OF PERSON MAKING STATEMENT**
1-6-01

# PETITIONER'S EVIDENTIARY HEARING EXHIBIT 7

# HOPKINS COUNTY SHERIFF'S OFFICE
## SUPPLEMENTAL REPORT

Date: 3-12-00
Ref: Death of Marquetta Deanne Follis George

On Sunday, 3-12-2000, I, Deputy Chris Hill, was dispatched to a call of a Disturbance/Trespassing on CR 3511, 2nd trailer house on the left. Dispatch advised that a Mr. Smiddy called 9-1-1 and advised that his neighbors were involved in a disturbance in his yard. Comp. advised that he wanted to press charges for trespassing on them. Dispatch also advised that the subjects left in a white utility truck headed toward Mahon Dispatch stated that the comp. saw the male subject force the female subject into the white truck and then driv off, and while driving off female subject tried to exit the vehicle and the male subject "jerked" her back in. Jus before arriving at CR 3511, dispatch called back and advised that a Mr. Ferrell had called 9-1-1 and advised th he just found a white female lying in the road at the end if his driveway on CR 3519 south of 1537. I then proceeded to that location being the closest officer. As I turned onto CR 3519, I noticed several ruts in the ditches on both sides of the road where it looked like a vehicle had ran completely off of the road several times recently. I pulled into the first residence on the right and briefly spoke with two subjects who quickly told me that they had not called the Sheriff's Office. I then looked further down the road and seen a subject waving me down. I proceeded further south and then saw a white female laying on the west side of the county road. I approached the subject in the road and saw that she was laying lifeless and bleeding profusely. I advised dispat of what I saw and then got out and ran up to the woman and began trying to talk to her to get her to respond. noticed that she had blood coming from her nose and mouth area. I also noticed that she had what looked to b part of the skull protruding through the skin above her left eyebrow and her right eye was partially open as wel as her mouth. I then checked for a pulse on both sides of her neck and listened for any sign of breathing. Afte attempting approx. 3 times, I felt no pulse and heard no breathing. I advised dispatch of this and about that same time Cpl. Jace Anglin arrived at the scene. He came up to the female where I was and I advised him that checked for a pulse and listened for breathing and got no response. Cpl. Anglin and I then began to tape off th scene and had dispatch notify 500,501, and the on-call investigator and advise them of what we had. I went up to speak with the complainant, Mr. Sedell Ferrell. Mr. Ferrell stated that he had been out feeding hay on his tractor and when he got back to his dairy, he saw the subject in the road and called 9-1-1. Cpl. Anglin got a statement from Mr. Ferrell while I spoke with the E.M.S. and F.D. personnel who had just arrived on the scene E.M.S. advised that they applied monitors to four different places on the subject and got no heartbeat or pulse. They advised me that they did leave the monitor hook-ups on the body. E.M.S. then covered the body with a white sheet. During the time that E.M.S. was attending the body, Deputy Victor Cosme (who was on the scen on CR 3511) advised that he was speaking with the original complainants as well and a family member of the deceased's boyfriends mother and sister. Dep. Cosme advised on radio that the subject that left in the white utility truck with the deceased was a subject by the name of Daniel Acker, and gave a description of him as wel as 2 to 3 locations where he may be found. Dep. Cosme further advised that the subject worked for Bentley Electric and the white truck would probably come back to that company and that there were 2 small children th were unaccounted for. About this time Sheriff Adams arrived at the scene. I walked over to him and advised him of all that I knew. Sheriff then advised me that the deceased was Marquetta (Markie) Follis George. I was familiar with that subject and was aquainted with her from previous law-enforcement related calls, however, sh was unrecognizable by this officer due to the trauma to the face and head. Shortly after, Eddy Moon from the Birthright F.D. came to me and advised that there was a subject at the road block that stated that he was a witness to a white utility truck being at the location where the body was found a few minutes before my arrival. advised Mr. Moon to let the subject through and have him come and talk to me. I spoke with the subject by th

# PETITIONER'S EVIDENTIARY HEARING EXHIBIT 8

# Hopkins County Sheriff Office

STATE OF TEXAS, THE COUNTY OF HOPKINS

*Voluntary Statement ( Not Under Arrest )*

PAGE __1__ OF __1__ PAGES

I, __Alicia Smiddy__ , AM __25__ YEARS OF AGE, MY

DATE OF BIRTH IS __5-18-74__ , I AM NOT UNDER ARREST FOR, NOR AM I BEING DETAINED FOR ANY

CRIMINAL OFFENSES CONCERNING THE EVENTS I AM ABOUT TO MAKE KNOWN TO __Victor M. Cosme__

MY ADDRESS IS __Rt 1 Box 32 f    Sulphur Springs__ AND HOME PHONE # IS __(903) 438-080?__

---

Marquetta came running out of their house yelling for us to call the sheriff, that he's not going to beat me!! She got behind me so he couldn't get her. my 1 yr old was in the stroller by me. He came charging out of the house with no shirt with an evil, mad look on his face, never saying anything, walked by my 1 yr old picked marquetta up over his shoulder. She was screaming, kicking, yelling No Daniel, No Daniel, trying her best to get loose. She started crying, he shoved her into a white utility truck on the Driver Door side she was trying to get out He hit her, shoved her on in, holding her down, spun off through the ditch she was trying to get out he was swerving all over the road turned and went towards Mahoney. That was the last we saw

__Victor M Cosme__
WITNESS

__Alicia Smiddy__
SIGNATURE OF PERSON GIVING STATEMENT

__3-12-00__
DATE

WITNESS

4

# PETITIONER'S EVIDENTIARY HEARING EXHIBIT 9

ORIGINAL

OFFENSE NUMBER: 00-03-031   OFFENSE: MURDER
VICTIM: MARQUETTA GEORGE   DEFENDANT: DANIEL CLATE ACKER
REPORTING INVESTIGATOR: TONEY HURLEY #504

---------------------------------------------------------------------------------------------------------

SUNDAY (3-12-2000)

SHORTLY AFTER 12:00pm, INVESTIGATOR HURLEY RECEIVED A CALL FROM THE HOPKINS COUNTY SHERIFF'S OFFICE. THE DISPATCHER ADVISED THAT A DEAD BODY HAD BEEN FOUND ON COUNTY ROAD 3519. HURLEY RESPONDED TO THE CALL AND APPROACHED THE CRIME SCENE FROM THE SOUTH. UPON ARRIVAL, HURLEY NOTICED THAT THE SCENE WAS SECURED BY DEPUTY JACE ANGLIN, DEPUTY CHRIS HILL AND SHERIFF ADAMS. HURLEY STARTED TAKING PHOTOGRAPHS OF THE SCENE WHILE SHERIFF ADAMS LOGGED THE PICTURES THAT WERE BEING TAKEN. ADAMS BRIEFED HURLEY ON THE SITUATION AND ADVISED THAT DANIEL ACKER WAS THE SUSPECT IN THIS CASE. ADAMS TOLD HURLEY THAT MARQUETTA GEORGE WAS THE DECEASED FEMALE. UPON WALKING UP TO THE BODY, HURLEY NOTICED A SMALL POOL OF BLOOD NORTH EAST OF GEORGE'S RIGHT FOOT. (APPROXIMATELY 6'3" FROM THE HEAD) HURLEY AND SHERIFF ADAMS DECIDED TO CALL DPS SARGENT WILLINGHAM TO THE SCENE. WILLINGHAM HAS THE CAPABILITY OF MAKING A COMPUTERIZED DIAGRAM OF THE CRIME SCENE. AFTER INVESTIGATOR WRIGHT ARRIVED, HURLEY SENT HIM (WRIGHT) TO DEPUTY COSME'S LOCATION. COSME WAS AT A HOUSE ON COUNTY ROAD 3511. THIS LOCATION IS THE HOME OF GEORGE AND ACKER. HURLEY WAS TOLD THAT THE INCIDENT STARTED AT THIS LOCATION.

HURLEY WAS TOLD THAT DPS TROOPER BILL REESE HAD LOCATED DANIEL ACKER AND WAS TAKING ACKER TO THE SHERIFF'S OFFICE.

INVESTIGATOR SHACKELFORD ARRIVED AND PHOTOGRAPHED THE SCENE AND ASSISTED SGT. WILLINGHAM WITH THE CRIME SCENE. JUDGE RONNY GLOSSUP WAS THE JP THAT WAS CALLED TO THE SCENE.

TEXAS RANGER DANNY RHEA MET HURLEY AT THE HOPKINS COUNTY SHERIFF'S OFFICE. HURLEY AND RHEA CONDUCTED A VIDEO TAPED INTERVIEW WITH DANIEL ACKER. ACKER HAD HIS RIGHTS READ TO HIM (ACKER) BY HURLEY. ACKER WAIVED HIS RIGHTS AND WANTED TO TALK ABOUT THE OFFENSE. THE INTERVIEW WAS VIDEO TAPPED. ACKER TOLD HURLEY AND RHEA THAT HE (ACKER) AND GEORGE WERE ARGUING ABOUT WHO SHE (GEORGE) HAD SPENT THE PREVIOUS NIGHT WITH. ACKER STATED THAT GEORGE RAN OUT OF THE HOUSE AND OVER TO THE NEIGHBORS AND WAS YELLING FOR THEM TO CALL THE POLICE. ACKER STATED THAT HE THEN GRABBED HER AND PLACED HER IN HIS WORK TRUCK. ACKER TOLD INVESTIGATORS THAT GEORGE JUMPED OUT OF THE TRUCK AND WAS RAN OVER. ACKER SAID THAT HE THEN BACKED UP AND TRIED TO LIFT HER (GEORGE) AND HE COULD TELL THAT SHE WAS DEAD. ACKER SAID THAT HE THEN DROVE AWAY LEAVING GEORGE LYING IN THE ROAD. ACKER STATED THAT HE TOLD HIS MOTHER, KENNY BAXTER AND GENE BOOTH THAT MARKIE HAD JUMPED OUT OF HIS TRUCK AND THAT SHE WAS DEAD. (REFER TO THE FIRST TAPPED INTERVIEW FOR DETAILS)

AT APPROXIMATELY 6:15pm (3-12-00), DORCAS DODD AND NANCY ACKER CAME TO THE SHERIFF'S OFFICE. DODD IS DANIEL'S SISTER AND NANCY IS DANIEL'S MOTHER. BOTH, NANCY AND DORCAS GAVE WRITTEN STATEMENTS CONCERNING THERE INVOLVEMENT IN THIS CASE. (INV.CHESTER RETAINS THE STATEMENTS)

MONDAY (3-14-00)

AT APPROXIMATELY 9:35am THE D.P.S. CRIME LAB ARRIVED AND PROCESSED THE WHITE FORD UTILITY TRUCK THAT ACKER WAS DRIVING DURING THE OFFENSE. D.P.S. TOOK CUSTODY OF ALL EVIDENCE THAT WAS COLLECTED.

AT APPROXIMATELY 2:10pm, JUDGE RONNY GLOSSUP TOLD HURLEY THAT THE MEDICAL EXAMINER'S OFFICE HAD CALLED HIM AND STATED THAT THEY BELIEVE THAT GEORGE WAS DEAD AT THE TIME SHE WAS RUN OVER. CHESTER CALLED THE M.E. AND SPOKE TO DR. MORNA GOUSLIN AND CONFIRMED THE INFORMATION.

CONTINUED SUPPLEMENT          MURDER     VICTI   ARQUETTA GEORGE     page 2

MONDAY (3-13-00)

AT APPROXIMATELY 3:50pm, HURLEY AND CHESTER CONDUCTED A VIDEO TAPED INTERVIEW WITH DANIEL ACKER. ACKER HAD HIS MIRANDA WARNING READ BEFORE ANY QUESTIONING. ACKER WAVED HIS RIGHTS AND WISHED TO TALK ABOUT THE OFFENSE. HURLEY TOLD ACKER ABOUT THE INFORMATION THAT WAS PROVIDED BY THE MEDICAL EXAMINER. ACKER GOT VERY ANGRY AND STATED; "THE MEDICAL EXAMINER IS LYING". ACKER CONTINUALLY STATED THAT MARKIE JUMPED OUT OF THE TRUCK. (SEE VIDEO TAPED INTERVIEW NUMBER TWO)

AFTER THE INTERVIEW, HURLEY WAS TAKING ACKER BACK TO THE JAIL, WHEN ACKER TOLD HURLEY THAT HE (ACKER) NEEDED TO TELL THE TRUTH ABOUT EVERYTHING. HURLEY AND CHESTER BEGAN THE THIRD TAPED INTERVIEW WITH ACKER. ACKER WAS REMINDED OF HIS RIGHTS AND HE STATED THAT HE UNDERSTOOD. ACKER TOLD INVESTIGATORS THAT HE WAS ASSAULTING GEORGE AT THE TRAILER HOUSE. ACKER STATED THAT MARKIE RAN OUT OF THE HOUSE AND WAS YELLING TO THE NEIGHBORS, "CALL THE POLICE". ACKER TOLD INVESTIGATORS THAT HE (ACKER) THEN GRABBED GEORGE AND PUT IN THE TRUCK AND DROVE OFF. ACKER STATED THAT GEORGE WAS TRYING TO GET OUT OF THE TRUCK WHILE HE WAS DRIVING. ACKER STATED THAT HE WAS PULLING GEORGE'S HAIR TO HOLD HER IN THE TRUCK. ACKER STATED THAT HE ALSO HIT GEORGE IN THE NOSE AND MOUTH. ACKER TOLD HURLEY AND CHESTER THAT HE KNEW THAT HE WAS THE CAUSE OF MARKIE'S DEATH BECAUSE HE PLACED HER IN THE TRUCK. ACKER CONTINUED TO STATE THAT GEORGE JUMPED OUT OF THE TRUCK.
(SEE VIDEO TAPED INTERVIEW NUMBER THREE)

TUESDAY (3-14-00)

HURLEY AND CHESTER MET WITH FRANK LONG AND BRIEFED LONG ON THE CASE. LONG TOLD INVESTIGATORS TO WORK THE CASE AS MURDER AND WAIT FOR THE MEDICAL EXAMINER'S REPORT.

HURLEY WAS OUT OF TOWN WHEN INVESTIGATOR CHESTER OBTAIN THE MURDER WARRANT AND SERVED IT ON DANIEL ACKER.

TONEY HURLEY, C.I.D.
INVESTIGATOR
4-3-2000